FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 25, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ARLEEN P., [1]<br><br>                              Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | NO:  1:21-CV-3082-LRS<br><br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 17.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is represented by Special Assistant United States Attorney Heidi L. Treisch.  The Court, having reviewed the administrative record and the parties' briefing, is fully

_____

[1] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy.  *See* Local Civil Rule 5.2(c).

ORDER - 1

informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 13, is granted and Defendant's Motion, ECF No. 17, is denied.

## JURISDICTION

Plaintiff Arleen P. (Plaintiff), filed for supplemental security income (SSI) on October 13, 2015, and alleged an onset date of January 1, 2010.[2]  Tr. 274-83. Benefits were denied initially, Tr. 122-25, and upon reconsideration, Tr. 126-29. Plaintiff appeared at hearings before an administrative law judge (ALJ) on October 16, 2017, January 16, 2018, and September 24, 2018.  Tr. 39-95.  On September 28, 2018, the ALJ issued an unfavorable decision, Tr. 16-36, and on August 22, 2019, the Appeals Council denied review.  Tr. 1-6.  Plaintiff filed a complaint in the United States District Court for the Western District of Washington, and on April 7, 2020, the United States Magistrate Judge Theresa L. Fricke entered an order granting remand pursuant to the stipulation of the parties.  Tr. 1502-1510.

While Plaintiff's appeal of the prior unfavorable decision was pending, she filed a new claim for SSI on January 20, 2020.  Tr. 1645-61.  Pursuant to the Appeals Council order dated May 6, 2020, the new claim was consolidated with the prior claim.  Tr. 1511-16.  After a fourth hearing on March 16, 2021, Tr. 1454-74,

---

[2] At the first hearing, Plaintiff amended the alleged onset date to October 13, 2015. Tr. 66, 1372.  Under Title XVI, benefits are not payable before the date of application.  20 C.F.R. §§ 416.305, 416.330(a); S.S.R. 83-20.

the ALJ issued an unfavorable decision on the consolidated claims on March 31, 2021.  Tr. 1369-93.  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1968.  Tr. 46.  Tr. 70.  She completed high school and has two A.A. degrees.  Tr. 70.  Plaintiff testified she is frequently in excruciating pain from fibromyalgia and arthritis, especially from her lower back down.  Tr. 72.  She is very fatigued.  Tr. 72.  She has cold and heat sensitivities.  Tr. 74.  She has pain in her lower back and in her upper back between her shoulder blades close to her neck.  Tr. 84-85.  It is difficult for her to concentrate when her back pain flares.  Tr. 85.  She has good days and bad days.  Sometimes she will have three bad days in a row where she cannot do anything.  Tr. 81.  Sometimes bad days occur weekly, but sometimes they don't.  Tr. 81.

She also has issues with anxiety and panic attacks.  Tr. 76, 82.  She has had panic attacks a couple of times a week since a violent incident with her son occurred.  Tr. 82-83.  A panic attack can last from 20 minutes to four hours.  Tr. 84.  Plaintiff testified that pain keeps her from functioning very well, which leads to depression,

ORDER - 3

stress, and anxiety.  Tr. 1461.  It is difficult to be around others when she is having a

flare-up.  Tr. 1461.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158

(9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

citation omitted).  Stated differently, substantial evidence equates to "more than a

mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).

In determining whether the standard has been satisfied, a reviewing court must

consider the entire record as a whole rather than searching for supporting evidence in

isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156

(9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's

decision on account of an error that is harmless." *Id*.  An error is harmless "where it

is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the

ORDER - 5

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable

of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 13, 2015, the application date. Tr. 1374. At step two, the

ORDER - 7

ALJ found that Plaintiff has the following severe impairments:  fibromyalgia, degenerative joint disease, degenerative disc disease, depressive disorder, and anxiety disorder.  Tr. 1374.  At step three, the ALJ found that does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 1375.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> The claimant can occasionally climb ladders, ropes, or scaffolds.  She can occasionally stoop, kneel, crouch, or crawl.  The claimant must avoid concentrated exposure to [] extreme cold, vibrations, respiratory irritants, and hazards.  She can occasionally reach overhead and lift no more than ten pounds.  The claimant can understand, remember, and execute both simple and detailed tasks.

Tr. 1377.

At step four, the ALJ found that Plaintiff has no past relevant work.  Tr. 1383.  At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as office helper, marker, electronics worker, bottling line attendant, and garment sorter.  Tr. 1384.  Thus, the ALJ found Plaintiff has not been under a disability as defined in the Social Security Act since October 13, 2015, the date the application was filed.  Tr. 1385.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act.  ECF No. 13.  Plaintiff raises the following issues for review:

      1.     Whether the ALJ properly considered Plaintiff's symptom testimony;

      2.     Whether the ALJ properly considered the medical opinion evidence; and

      3.     Whether the ALJ properly considered the Grid Rules at step five.

ECF No. 13 at 2.

## DISCUSSION

### A.  Symptom Testimony

Plaintiff contends the ALJ did not properly assess her symptom testimony. ECF No. 13 at 5-12.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

ORDER - 9

1    First, regarding Plaintiff's physical symptom claims, the ALJ found that the

2    record demonstrates some periods of symptom flares but does not show that

3    Plaintiff's symptoms are as frequent, severe, and limiting as alleged.  Tr. 1379.  The

4    ALJ cited a July 2016 examination showing relatively normal range of motion in the

5    extremities, intact gait, intact sensation and strength which the ALJ characterized as

6    "indicating intact physical functioning."  Tr. 1379 (citing Tr. 916-17).  However, the

7    same record indicates that Plaintiff rated her fatigue a 3 on a 0-3 scale, complained

8    of brain fog, experienced widespread pain, was tender to the touch, had a history

9    consistent with diffuse body pain, and noted that some days were better than others.

10   Tr. 910.  The ALJ referenced records from October 2016 to January 2018, noting

11   they show findings similar to those from July 2016, with occasional limitations in

12   shoulder range of motion, tenderness, and mildly antalgic gait.  Tr. 1379 (citing Tr.

13   958, 1008, 1064, 1108, 1205, 1252, 1292, 1316).  However, the ALJ failed to note

14   that during the same period findings included body pain all over (Tr. 986, 1023,

15   1042, 1083, 1175); generalized pain, fatigue, sleep disturbance, widespread muscle

16   and joint pain, and diffuse mechanical allodynia (Tr. 1003, 1008); fatigue as the

17   primary problem, widespread myofascial tenderness, moderate to severe diffuse

18   mechanical allodynia (Tr. 1060); and pain rated at 5/10, moderate diffuse allodynia,

19   and tenderness in multiple areas (Tr. 1247-57).  Furthermore, the ALJ's

20   consideration of range of motion, gait, strength, and sensation ignores that

21   fibromyalgia is a disease that eludes objective measurement.  *Benecke v. Barnhart*,

ORDER - 10

379 F.3d 587, 594 (9th Cir. 2004). "[A] person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017). Normal objective examination results can be "perfectly consistent with debilitating fibromyalgia." *Id.* at 666. The records cited by the ALJ do not reasonably support the conclusion that Plaintiff's symptoms are not as frequent, severe, or limiting as alleged.

The ALJ also cited an October 2017 medical record as evidence that Plaintiff did not report fatigue is a major problem, but the record actually reflects that Plaintiff rated her fatigue at a 5 out of 10, indicating that it was somewhat of a problem the previous week. Tr. 1379 (citing Tr. 1212). In December 2020, Plaintiff received stitches for a cut in the emergency room and the ALJ noted that she denied back and extremity pain and did not report fatigue. Tr. 1379, 2027-28. However, the ER visit was unrelated to Plaintiff's disabling condition and the record reflects that Plaintiff complained of fatigue or difficulty sleeping numerous times. Tr. 411, 800, 910, 954, 1003, 1755, 1777. These records are not substantial evidence of inconsistencies in reporting.

The ALJ also found that later records indicate Plaintiff's condition was stable. Tr. 1379. Plaintiff reported her fibromyalgia symptoms were "well controlled, all things considered" in September 2019, Tr. 1848, and no mention was made of any fibromyalgia symptoms when she received surgical treatment for an abscess in her armpit, Tr. 1834. In January 2020, she was having "[l]ots of back pain" but was

"[o]therwise stable, if not pain free." Tr. 1803. The ALJ again noted benign findings regarding gain, extremity movement, and range of motion, and noted a finding of "no acute distress." Tr. 1379. According to the ALJ, these records indicate that Plaintiff's physical impairments do not cause the severe limitations alleged, and the record does not corroborate her claim that symptoms wax and wane. However, the ALJ did not mention Plaintiff's April 2018 report of pain of 7/10, difficulty with daily activities, and moderate to severe allodynia on exam; nor did the ALJ mention Plaintiff's December 2019 report of chronic pain every day, energy that comes and goes, and difficulty doing things at home because of physical problems, Tr. 1779-84. These findings in combination are consistent with waxing and waning of symptoms. Furthermore, "stable" indicates a lack of change, but not necessarily a lack of symptoms, pain, or functional limitations. *Christina S. v. Comm'r of Soc. Sec.*, No. C18-5269-JPD, 2019 WL 13205552, at *6 (W.D. Wash. Feb. 21, 2019). A lack of change in Plaintiff's condition does not reflect an inconsistency with her reported symptoms.

The ALJ must consider the longitudinal record regarding fibromyalgia whenever possible because symptoms can wax and wane so that a person may have "bad days and good days." Social Security Ruling 12-2p. The Appeals Council found the previous ALJ erred by failing to properly consider waxing and waning of symptoms due to fibromyalgia. Tr. 1513. Here, the ALJ's consideration of the record is selective and considers findings such as muscle strength, sensory functions,

ORDER - 12

and reflexes, which are not indicative of the severity of fibromyalgia symptoms. The ALJ's statements about waxing and waning are conclusory and not supported by substantial evidence.

The second reason given by the ALJ for rejecting Plaintiff's alleged physical limitations is her activities indicate that she is more capable than alleged. Tr. 1380. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in evaluating symptom claims. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ found that while Plaintiff alleges debilitating physical symptoms, she camped, traveled, and went to a fair. Tr. 1380. The ALJ observed that these activities "indicate that her symptoms do not prevent her sitting or standing for long periods of time." Tr. 1380. However, the ALJ did not consider that Plaintiff qualified her participation in these activities. *See* Tr. 76 (went camping Friday and was "wiped out" and slept most of Sunday; attended fair for only 1.5 hours); Tr. 1733 (back from Yakima after 10-day visit). The Appeals Council found the previous ALJ erred by failing to consider Plaintiff's "description of her experience coping with physical and mental challenges during those events," Tr. 1513, and this ALJ did the same. Furthermore, none of these activities are described in detail in the record, nor does the ALJ explain how they are inconsistent with Plaintiff's alleged sitting and standing limitations. Each of these activities could be performed in a manner consistent with her allegation of severe fatigue and incapacitating pain flares two to three times per week. Tr. 1378. Thus,

1  this is not a clear and convincing reason for rejecting Plaintiff's allegations of

2  physical limitations.[3]

3  **B.     Medical Opinions**

4         Plaintiff contends the ALJ erred in considering the opinions of L. Thomas,

5  M.D., N. Moody, PA-C, and Greg Saue, M.D; and the opinions of T. Bowes,

6  Psy.D., and T. Genthe, Ph.D.,

7         There are three types of physicians: "(1) those who treat the claimant

8  (treating physicians); (2) those who examine but do not treat the claimant

9  (examining physicians); and (3) those who neither examine nor treat the claimant

10 but who review the claimant's file (nonexamining or reviewing physicians)."

11 *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

12 "Generally, a treating physician's opinion carries more weight than an examining

13 physician's, and an examining physician's opinion carries more weight than a

14 reviewing physician's." *Id*.  "In addition, the regulations give more weight to

15 opinions that are explained than to those that are not, and to the opinions of

16

17

18

---

19 [3] The ALJ also discussed Plaintiff's mental health allegations and found the record

20 does not corroborate them.  Tr. 1379.  For reasons discussed below, the Court does

21 not reach this issue.

ORDER - 14

specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).[4]

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

   1. *Neil Moody Jr., PA-C*

---

[4] For claims filed on or after March 27, 2017, the regulations changed the framework for evaluation of medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Plaintiff's claim was filed before March 2017, so the medical evidence is evaluated under the prior regulations.

ORDER - 15

1    In August 2020, PA-C Moody completed a "Medical Report" form indicating

2    diagnoses of osteoarthritis, fibromyalgia, and cervical degenerative disc disease.  Tr.

3    1710-12.  He opined that Plaintiff needs to lie down for 15-30 minutes, one to two

4    times per day for fatigue and pain relief; that work on a regular and continuous basis

5    would cause her pain, stiffness, and fatigue to increase; and that she would miss

6    work four or more days per month due to periodic flares, increased fatigue, and sleep

7    disturbances; and that she is severely limited and unable to meet the demands of

8    sedentary work.  Tr. 1710-11.  The ALJ gave little weight to the opinion of PA-C

9    Moody.  Tr. 1381.

10    Under regulations applicable at the time Plaintiff's claim was filed, the

11    opinion of an acceptable medical source, such as a physician or psychologist, is

12    given more weight than that of an "other source."  20 C.F.R. § 416.927 (2012);

13    *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  "Other sources" include

14    nurse practitioners, physician assistants, therapists, teachers, social workers, spouses,

15    and other non-medical sources.  20 C.F.R. § 416.913(d) (2013).  However, the ALJ

16    is required to "consider observations by non-medical sources as to how an

17    impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226,

18    1232 (9th Cir. 1987).  Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

19    1993), an ALJ must give reasons germane to "other source" testimony before

20    discounting it.

21

First, the ALJ found PA-C Moody's assessment was brief and conclusory and unsupported by clinical findings. Tr. 1381-82. When confronted with conflicting medical opinions, an ALJ need not accept an opinion that is conclusory and brief and unsupported by clinical findings. *Tonapetyan v. Halter*, 42 F.3d 1144, 1149 (9th Cir. 2001), *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ noted that PA-C Moody's assessment "does not include a narrative analysis explaining how [the] imaging studies correlate to the assessed limitations." Tr. 1381. However, PA-C Moody indicated that an x-ray and MRI demonstrated evidence of cervical stenosis and osteoarthritis of the hand and knee. Tr. 1710. He indicated that Plaintiff's symptoms include pain, stiffness, fatigue, and lack of dexterity; that she needs to lie down to relieve pain and fatigue; that and working would increase pain, stiffness, and fatigue. Tr. 1710-11. Furthermore, the ALJ overlooked that Plaintiff's primary condition is fibromyalgia, which, as discussed *supra*, "is a disease that eludes objective measurement," *Benecke*, 379 F.3d at 594, and that normal exam results can be "perfectly consistent with disabling fibromyalgia," *Revels*, 874 F.3d at 666. PA-C Moody also referenced Plaintiff's initial exam on July 7, 2016, with Deepika Arora, M.D., her treating rheumatologist, which included findings of, for example, generalized allodynia, widespread pain, fatigue, and multiple tender points above and below the waistline. Tr. 909, 1712. PA-C Moody's opinion is not conclusory or brief or unsupported by clinical findings. The ALJ's reasoning is not supported by substantial evidence.

Second, the ALJ found PA-C Moody's opinion was inconsistent with the record as a whole.  Tr. 1381-82.  An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ cited findings of intact strength and sensory functioning, normal or mildly antalgic gait, alert presentation, and intact or nearly intact range of motion as inconsistent with PA-C Moody's assessment of limitations.  Tr. 1381-1382.  As noted *supra*, such findings are not necessarily inconsistent with debilitating fibromyalgia.  *Revels*, 874 F.3d at 663.  The ALJ does not explain how these findings are inconsistent with PA-C Moody's opinion that pain, fatigue, and stiffness require rest and that periodic flares would cause Plaintiff to miss work. The ALJ's findings are not supported by substantial evidence.

### 2. Lijo Thomas, M.D.

In September 2018, Dr. Thomas, Plaintiff's treating physician, completed a "Physical Residual Functional Capacity Assessment" form.  Tr. 1363-1368.  He opined Plaintiff can stand or walk for 15 minutes at a time; can sit for one hour at a time; needs the ability to alternately sit and stand; needs unscheduled breaks; can lift/carry less than 10 pounds; has postural limitations in every category; has limited reaching for the left shoulder; has handing limitations; and has environmental limitations regarding exposure to heat and cold.  Tr. 1363-66.  He also opined that

ORDER - 18

Plaintiff would be absent from work more than four times per month due to her impairments.  Tr. 1367.  The ALJ gave little weight to Dr. Thomas' opinion.

First, the ALJ found Dr. Thomas did not provide a narrative explanation of the basis for his opinions.  When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.  *Tonapetyan*, 42 F.3d at 1149, *Matney*, 981 F.2d at 1019.  The ALJ noted Dr. Thomas did not provide a narrative explanation of the basis for his opinions, such as citing clinical observations or imaging studies.  Tr. 1381.  The ALJ also observed that Dr. Thomas did not identify the symptoms or diagnoses that would cause these limitations.  Tr. 1381.  Indeed, Dr. Thomas left several portions of the assessment form blank, including diagnosis, symptoms, and side effects from medication, and primarily filled out the form with checkmarks and little to no narrative explanation for his opinion.  Tr. 1363.  However, if treatment notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may not automatically be rejected.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014); *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017); *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form").  Information about Plaintiff's diagnosis and symptoms are readily found in Dr. Thomas' records and were not discussed by the ALJ with

specificity.  This is not a legitimate reason supported by substantial evidence for rejecting the opinion.

Second, the ALJ found that the limitations assessed by Dr. Thomas are inconsistent with the record as a whole.  An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings.  *Batson*, 359 F.3d at 1195.  The ALJ again cited gait, range of motion, and strength findings as inconsistent with Dr. Thomas' assessment without considering that those findings do not necessarily reflect limitations associated with fibromyalgia.  Tr. 1381.  The ALJ also noted what the ALJ characterized as infrequent symptom flares and Plaintiff's subjective reports.  Tr. 1381.  However, as noted *supra*, the ALJ's assessment of that evidence is flawed.  This is not a specific, legitimate reason supported by substantial evidence.

### 3.  Greg Saue, M.D.

In April 2016, Dr. Saue, a state agency reviewing physician, reviewed the record and completed a Residual Functional Capacity Assessment.   Tr. 115-17.  After reviewing the record, he opined that Plaintiff could occasionally lift or carry 10 pounds; stand and/or walk up to six hours in an eight-hour workday; sit up to six hours in an eight-hour workday; has postural limitations for climbing, stooping, crouching, kneeling, and crawling; has environmental limitations regarding cold, vibration, and hazards.  Dr. Saue indicated the limitations were assessed based on Plaintiff's history of fibromyalgia without current exam and degenerative disc

ORDER - 20

disease and shoulder and knee degenerative joint disease.  Tr. 115-17.  The ALJ

gave significant weight to Dr. Saue's opinion.  Tr. 1380.

Plaintiff notes that Dr. Saue did not address or assess whether or how many

days Plaintiff might miss work, if unscheduled breaks were needed, or whether

Plaintiff needs to lie down during the day.  ECF No. 13 at 13; Tr. 115-17.  Plaintiff

argues that the opinions of Dr. Thomas and PA-C Moody were consistent with each

other and were uncontradicted by Dr. Saue and should therefore be credited.  ECF

No. 13 at 13.  Plaintiff also argues the ALJ improperly gave weight to Dr. Saue's

reviewing over the opinions of treating providers Dr. Thomas and PA-C Moody, and

that the ALJ did not take into account PA-C Moody's rheumatology specialization.

ECF No. 13 at 13.  Dr. Saue also noted there was no "current exam" regarding

fibromyalgia at the time of his review, Tr. 116; indeed, Plaintiff first saw

rheumatologist Dr. Arora in July 2016, Tr. 909-21, and was then followed by PA-C

Moody.

The ALJ stated that Dr. Saue's opinions are "consistent with the record as a

whole, including the objective medical evidence, which generally shows intact range

of motion and gait and some periodic deficits of functioning or mildly antalgic gait."

Tr. 1380.  This is the same improper consideration upon which the ALJ rejected the

opinions of Dr. Thomas and PA-C Moody and Plaintiff's symptom testimony.  As

discussed *supra*, findings regarding range of motion, gait, and strength which, as

discussed *supra*, are not objective measures of limitations due to fibromyalgia.  The ALJ's reason for crediting Dr. Saue's opinion is improper.

    *4.  Tasmyn Bowes, Psy.D. and Thomas Genthe, Ph.D.*

    Plaintiff contends the ALJ erred in evaluating the mental health limitations assessed by Dr. Bowes and Dr. Genthe.  ECF No. 13 at 15-19.  Because the ALJ erred in evaluating Plaintiff's fibromyalgia and the medical opinions assessing physical limitations, the matter is remanded on that basis.  Thus, the Court does not reach the issue of whether there is additional error in the ALJ's assessment of the mental health evidence.

**C.    Remedy**

    The Court has discretion to remand a case for additional evidence or to simply to award benefits.  *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *Benecke*, 379 F.3d at 595 (citations omitted).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).

    Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ

has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, we remand for an award of benefits. *Revels*, 874 F.3d at 668. Even where the three prongs have been satisfied, this Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

The Court finds that in this case, the credit-as-true factors are satisfied and that remand for the calculation and award of benefits is warranted. First, the record has been fully developed. This matter has previously been remanded and there is ample testimony from the hearing transcripts. There are numerous medical records in the file and no significant ambiguity about Plaintiff's limitations. The second prong is satisfied because, as discussed *supra*, the ALJ erred in evaluating the evidence regarding fibromyalgia, and therefore improperly rejected Plaintiff's testimony regarding her physical limitations and improperly weighed the opinions of her treating providers and other medical opinion evidence. The third prong of the credit-as-true rule is satisfied because the vocational expert was asked a hypothetical question about the ability of an individual with limitations described by Dr. Thomas and PA-C Moody and the vocational expert testified that those limitations would be incompatible with competitive work. Tr. 92-93, 1471-72.

The credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citations omitted). Plaintiff's application has been pending for nearly eight years, has been reviewed by the ALJ twice and the Appeals Council once, and was previously remanded with little benefit because the ALJ again erred in evaluating evidence related to fibromyalgia. Further proceedings would appear to serve no useful purpose. *See Hill*, 698 F.3d at 1162 (noting a Court may exercise its discretion to remand a case for an award of benefits "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.") (internal citations and quotations omitted). In this case, the record does not raise "serious doubt" that Plaintiff's fibromyalgia precludes significant work activity.

The Court therefore reverses and remands to the ALJ for the calculation and award of benefits.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is GRANTED.

ORDER - 24

2. Defendant's Motion for Summary Judgment, ECF No. 17, is DENIED.

3. This case is **REVERSED** and **REMANDED** for immediate calculation and award of benefits consistent with the findings of this Court.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** August 25, 2023.

LONNY R. SUKO
Senior United States District Judge

ORDER - 25